IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

OLMEDO ESPINOZA and TOMAS LOPEZ, individually and on behalf of all other persons similarly situated who were employed by 953 ASSOCIATES LLC and/or GRACE UNDER FIRE LLC and/or SEAN CONNOLLY; and/or any other entities affiliated with or controlled by 953 ASSOCIATES LLC and/or GRACE UNDER FIRE LLC and/or SEAN CONNOLLY,

    Plaintiffs,

- against -

953 ASSOCIATES LLC, GRACE UNDER FIRE LLC, SEAN CONNOLLY; and any other entities affiliated with or controlled by 953 ASSOCIATES LLC and/or GRACE UNDER FIRE LLC and/or SEAN CONNOLLY,

    Defendants

Docket No. 10-CV-5517 (SAS)

**DECLARATION OF CHRIS TAUB**

    CHRIS TAUB declares under penalty of perjury and upon personal knowledge that the foregoing is true and correct:

    I am a resident of Florida and am over 18 years of age. I submit this affidavit in support of the Plaintiffs' Motion for Conditional Certification and Class Certification. I worked for the Eatery Restaurant in 2009 from March through July as a front-of-house manager. While working at The Eatery Restaurant, Sean Connolly, the owner, was at the restaurant on almost a daily basis and regularly supervised and directed the workers in their job functions to a point where he was compulsively micro-managing and was involved in all aspects of the daily operations. Sean Connolly at times, but not all the time, directed me to modify the employee's "worked" hours in

the computer system based on: for example, if an employee was scheduled to start his or her shift at 4:00 p.m., but clocked in and started working at 3:53 p.m., I was directed to change that employee's "clock-in" time to 4:00 p.m. so as to reflect the times posted on each employee's posted schedule. As such, that employee would not be paid for the difference in time of work. Also, for example, if an employee was scheduled to stop working at 12:00 a.m., but actually worked until 12:10 a.m., I was directed to change the time in the computer system to show that the employee only worked until 12:00 a.m.. The first thing I did at the beginning of certain work days, being instructed by Sean Connolly, was to print out a list of the employees who were clocked in. I would then go into the Aloha POS system and modify the workers' hours. Specifically, I would change the clock-in times to the time the employee was scheduled to start working rather than the actual time the employee starting working. Workers typically started working before the scheduled shift time. The only time this was done, was when Sean Connolly instructed me to do so in an effort to "maintain a better labor percentage" as he stated. At the end of the night, I performed the same task by modifying the computerized time keeping records. Specifically, I would modify the hours to show an earlier "clock-out" time than the time that the workers actually completed work. On certain days, I modified the number of hours employees worked. I did this for almost every employee, regardless of their position, including servers, hosts, bartenders, food runners, busboys, cooks, food preparers, dishwashers, etc. I was also told by Sean Connolly that all servers had to clock-out at the same time they printed their "cash out slip" / "server report". I enforced this policy. If the server did not clock out at this time, I did it for them, or modified the time records accordingly. Even though it was a policy that servers had

to clock out when they printed their "cash out slip" / "server report", the servers were always still working, either doing side work, cleaning tables, or determining their financials and tip-out amounts and how much money they owed the restaurant. The servers were not "on the clock" for this time and so were not paid for this time. The Defendants' computer time records therefore are inaccurate and do not accurately show all the hours employees actually worked. In addition, every day an hour's pay was deducted from every employee for a "lunch break." When inquiring about this with Sean Connolly, I was told that this was done as a means to compensate the restaurant for the "left-over food", which the employees got to consume instead of it being thrown in the garbage as waste. Employees never got breaks and were not allowed to leave the building and the only time they could actually take a break to eat was after their shift was over and they had already clocked-out or if they had the ability to eat something fast while taking a less than 5 minute cigarette break in the internal employee restroom. On more than one occurrence, I have witnessed Sean Connolly taking some of employees' tips for his own personal use. The tips were all pooled together and the money would be divided and placed in individual bundles in the office safe for each employee. I have personally witnessed Sean Connolly open the safe, take some of the money, and pocket it. I never made it aware to Sean Connolly that I had witnessed him taking this money for fear that I would lose my job. Sean Connolly spent much time in the management office alone with the door dead-bolted and locked to the point where other managers were not able to even use their keys to get in unless he granted us access, and Sean Connolly would use "post it notes" to cover the cameras. All managers had knowledge of this and we were aware that he obviously was trying to be discreet about something he was

doing in the office. Employees often complained to me that their tips were short or missing altogether. In fact, I recall 2 or 3 occasions, when certain employees did not receive any tip money for a specific shift worked, even though I had personally placed money in the safe for them during the prior shift. On those occasions, I gave money to the employees from my own pocket. From the day I started as a manager, Employees would regularly complain and mention to me that they were not getting paid for all the hours that they worked, that they were not being awarded the breaks they were entitled to, and that their pay was being deducted for food even if they did not consume any. On many "pay-days," Employees would regularly bring to my attention that their accumulated hours on their checks did not match what they actually worked. As a manager, I understand that I may not be able to recover any money as part of this lawsuit. However, I want to help my former co-workers recover the money they are owed by the Defendants because it is the right thing to do. Some of my former co-workers are non-English speaking immigrants who did not know that the Defendants were not paying them all the wages they were legally entitled to. Many of them may be afraid to pursue their claims on their own.

Orange County, Orlando, Florida

Dated: May 20th, 2011

Chris Taub