UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OLMEDO ESPINOZA and TOMAS LOPEZ, individually and on behalf of all other persons similarly situated who were employed by 953 ASSOCIATES LLC and/or GRACE UNDER FIRE LLC and/or SEAN CONNOLLY; and/or any other entities affiliated with or controlled by 953 ASSOCIATES LLC and/or GRACE UNDER FIRE LLC and/or SEAN CONNOLLY,<br>Plaintiffs,<br>- against -<br>953 ASSOCIATES LLC, GRACE UNDER FIRE LLC, and SEAN CONNOLLY; and any other entities affiliated with or controlled by 953 ASSOCIATES LLC and/or GRACE UNDER FIRE LLC and/or SEAN CONNOLLY,<br>Defendants. | ECF CASE<br><br>10-CV-5517 (SAS) |

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release is entered into by and between Olmedo Espinoza and Tomas Lopez (the "Named Plaintiffs"), as well as all Class Members (as defined below) and by Defendants (as defined below).

1. **RECITALS AND BACKGROUND**

WHEREAS, the Named Plaintiffs filed a Complaint against Defendants under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and New York State's Labor Laws claiming that Defendants failed to pay minimum and overtime wages and improperly retained gratuities;

WHEREAS, the Named Plaintiffs filed a Motion with the Court seeking to certify the Litigation as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and a collective action pursuant to 29 U.S.C. § 216(b) (the "Motion") with respect to all non-managerial employees of 953 Associates, LLC d/b/a Eatery;

WHEREAS, the Motion was fully briefed on October 14, 2011;

WHEREAS, on November 16, 2011, the Court certified the Litigation (as defined below) as a class and collective action and authorized that notice be sent to Class Members;

WHEREAS, the Parties (as defined below) have engaged in and completed extensive discovery during the course of the Litigation;

1

WHEREAS, Plaintiffs and Defendants also participated in a full-day mediation session on February 2, 2012, which was conducted by Ruth Raisfeld, an experienced and well-known mediator who has successfully negotiated settlement in similar wage and hour class and collective actions against New York City restaurants;

WHEREAS, Defendants (as defined below) denied and continue to deny all of the allegations made by Named Plaintiffs in the Litigation and have denied and continue to deny that they are liable or owe damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation.  Nonetheless, solely for the purpose of settling this Litigation, and without admitting any wrongdoing or liability, Defendants have agreed to disseminate a notice of settlement pursuant to Rule 23 of the Federal Rules of Civil Procedure to all Class Members;

WHEREAS, the purpose of this Agreement is to settle fully and finally all State Law Claims and FLSA Claims (as defined below), between the Named Plaintiffs, the Class Members, the FLSA Claimants, and Defendants, including all claims asserted in the Litigation in order to avoid the burden, expense, and uncertainty of continuing the Litigation; and

WHEREAS, Plaintiffs' Counsel analyzed and evaluated the merits of the claims made against Defendants and the impact of this Agreement on Named Plaintiffs and Class and based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks of continued litigation, including the possibility that the Litigation, if not settled now, might not result in any recovery whatsoever, or might result in a recovery that is less favorable and that would not occur for several years, Plaintiffs' Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable and adequate and that this Agreement is in the best interest of the Named Plaintiffs and Class.

NOW THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Litigation on the following terms and conditions:

1. **DEFINITIONS**

   The defined terms set forth in this Agreement have the meanings ascribed to them below.

1.1 **"Action" or "Litigation."**  The Action or Litigation or Action shall mean the above referenced case filed in the United States District Court for the Southern District of New York encaptioned 10-cv-5517(SAS)(FM).

1.2 **"Administrator" or "Claims Administrator".**  The Administrator or Claims Administrator refers to the Administrator selected to mail the Notices and administer Settlement.

1.3 **"Agreement."**  Agreement means this Settlement Agreement and Release.

1.4 **"Bar Date."** The Bar Date shall mean the date by which any Class Member who wishes to qualify as a Claimant must file a Claim Form, which date shall be no later than forty-five (45) days after the initial mailing of Notice by the Administrator.

1.5 **"Claim Form."** The Claim Form shall mean the form, a copy of which is attached to the Notice of Proposed Settlement, that the Class Members must sign and return post-marked by the Bar Date. The Claim Form must be filed with the Claims Administrator for a Class Member to be eligible for a distribution from the Settlement Account.

1.6 **"Claimant."** "Claimant" shall mean those Class Members who are eligible to receive a Settlement Check by virtue of: (i) filing with the Administrator a Claim Form by the Bar Date, and (ii) whose Proof of Claim is not rejected. Claimants acknowledge that they agree to settle and release all State Law Claims and FLSA claims.

1.7 **"Class" or "Class Member(s)".** Class or Class Members shall be defined as: all present and former persons employed as servers, hosts, delivery-persons, runners, bus-persons, porters, bartenders, cooks, food preparers, dishwashers, flyer distributors, and/or any other restaurant positions by 953 Associates LLC d/b/a Eatery at any time since July 20, 2004 and April 20, 2012, and at Grace Under Fire LLC d/b/a Whym at any time between November 16, 2005 and April 20, 2012 excluding all administrative, executive, supervisory, office, and managerial positions.

1.8 **"Class Counsel" or "Plaintiffs' Counsel."** Class Counsel or Plaintiffs' Counsel shall mean Lloyd Ambinder, and LaDonna Lusher, Virginia & Ambinder, LLP, Trinity Centre, 111 Broadway, Suite 1403, New York, New York, 10006.

1.9 **"Class Member List."** The Class Member List shall mean a list of all Class Members, identified by: (i) name; (ii) last known address; (iii) classification or department; (iv) dates of employment during the Relevant Time Period; and (v) social security numbers, if available, contained in a confidential document that the Defendants shall provide to Plaintiffs' Counsel and the Settlement Administrator. The Class Member List is to be used by Plaintiffs' Counsel and Settlement Administrator to effectuate settlement, and may not be copied, disseminated or used for any other purpose.

1.10 **"Court."** The Court shall mean the United States District Court for the Southern District of New York, the Honorable United States District Court Judge Shira A. Scheindlin presiding.

1.11 **"Days."** Days shall mean calendar days.

1.12 **"Defendants."** The Defendants are 953 Associates LLC d/b/a Eatery, Grace Under Fire LLC d/b/a Whym, and Sean Connolly.

1.13 **"Defense Counsel."** Defense Counsel shall be Carolyn D. Richmond, Eli Freedberg, and Glenn S. Grindlinger of Fox Rothschild LLP.

1.14 **"Fairness Hearing."** The Fairness Hearing shall mean the hearing before the Court relating to the Motion for Final Approval, unless otherwise scheduled by the Court without the filing of a motion.

1.15 **"Final Effective Date."** The Final Effective Date shall be thirty (30) days after the Court has entered a Final Order approving this Agreement; the time to appeal from the Final Order has expired and no notice of appeal has been filed or if a notice of appeal is filed, the latest of the following, if applicable, has occurred: (1) any appeal from the Final Order has been finally dismissed; (2) the Final Order has been affirmed on appeal in a form substantially identical to the form of the Final Order entered by the Court; (3) the time to petition for review with respect to any appellate decision affirming the Final Order has expired; and (4) if a petition for review of an appellate decision is filed, the petition has been denied or dismissed, or, if granted, has resulted in affirmance of the Final Order in a form substantially identical to the form of the Final Order entered by the Court.

1.16 **"Final Order."** The Final Order shall mean the order entered by the Court after the Fairness Hearing approving the terms and conditions of this Agreement, distribution of the settlement payments from the Settlement Account, approval of professional fees and costs, and dismissal of this action.

1.17 **"FLSA Claimants**." The FLSA Claimants shall mean the Class Members who have already filed timely Consent to Join forms. FLSA Claimants do not have to file a Claim form to participate in this settlement. FLSA Claimants acknowledge that they agree to settle all FLSA and New York State Law Claims.

1.18 **"FLSA Claims."** The FLSA Claims shall mean all wage and hour claims that could have been asserted pursuant to the Fair Labor Standards Act by or on behalf of the FLSA Claimants. Released FLSA Claims include, but are not limited to, all claims under federal law for unpaid minimum or overtime wages, tip credit claims, tip misappropriation claims, and any other related wage and hour claims, all 'derivative benefit claims' (*defined as* claims for benefits resulting from the alleged failure to pay overtime or wages, both ERISA and non-ERISA benefits), interest on such claims, and attorneys' fees, expenses and costs related to such claims.

1.19 **"Implementing Order."** The Implementing Order shall mean the Order entered by the Court: (i) effectuating the settlement; (ii) approving the Notice and Claim forms and, (iii) directing the manner and timing of publishing the Notice to the Class.

1.20 **"Motion."** The Motion shall mean the Named Plaintiffs' Motion for class action certification pursuant to Rule 23 of the Federal Rules of Civil Procedure and collective action certification pursuant to 29 U.S.C. § 216(b) that was fully briefed on October 14, 2011.

1.21 **"Named Plaintiffs."** The Named Plaintiffs shall mean Olmedo Espinoza and Tomas Lopez.

1.22 **"Notice" or "Notices."** Notice or Notices shall mean the Court–approved Notice of Proposed Settlement including notice of an opportunity to opt-out and/or object to the proposed settlement.

1.23 **Objector.** An Objector shall mean any Class Member who properly files an objection to this Agreement, and does not include any individual who opts-out of this Agreement.

1.24 **"Opt-out Statement."** An Opt-out Statement is a written signed statement that a Class Member who has decided to opt-out and not be included in this Agreement. Any Class Member who does not submit an Opt-out Statement waives and releases all New York State Law Claims, even though he or she does not submit a Proof of Claim form. A Class Member who submits an Opt-out Statement retains any FLSA and/or New York State Law Claims.

1.25 **"Parties**.**"** The Parties shall refer to Named Plaintiffs, Defendants and the Class Members collectively.

1.26 **"Relevant Period" or Relevant Time Period."** The Relevant Period or Relevant Time Period means for 953 Associates LLC d/b/a Eatery any time between July 20, 2004 and April 20, 2012, and for Grace Under Fire LLC d/b/a Whym any time between November 16, 2005 and April 20, 2012.

1.27 **"Settlement Account."** The Settlement Account shall mean a qualified settlement fund established by the Administrator, pursuant to this Agreement, at a bank reasonably acceptable to the parties. The Settlement Account shall contain the aggregate of all Claims, professional fees and costs as authorized by the Court in the Final Order, but in no event shall the Settlement Account exceed the Settlement Fund.

1.28 **"Settlement Checks."** The Settlement Checks shall mean the checks issued to Claimants from the Settlement Account by the Administrator as calculated by the Administrator in accordance with this Agreement.

1.29 **"Settlement Fund."** The Settlement Fund shall mean the maximum aggregate amount that can be paid by Defendants pursuant to this Agreement and includes professional fees, costs and expenses. Under no circumstances shall the Settlement Fund exceed Nine Hundred Thousand Dollars ($900,000.00), excluding employer's share of payroll taxes, regardless of the amount of Class Members that file Claim Forms.

1.30 **"State Law Claims."** The State Law Claims shall mean all wage and hour claims that could have been asserted under New York State law by or on behalf of the Class, excluding Class Members who opt-out of the settlement but not including claims under the Fair Labor Standards Act. Released New York State Law Claims include, but are not limited to, all claims under state law for unpaid minimum or overtime wages, tip credit claims, tip misappropriation claims unpaid spread-of-hours claims, and any other related wage and hour claims, all 'derivative benefit claims' (*defined as* claims for benefits resulting from the alleged failure to pay overtime or wages, both ERISA and non-ERISA benefits), interest on such claims, and attorneys' fees, expenses and costs related to such claims.

**2.    INITIAL PROCEDURAL ISSUES**

**2.1    Binding Agreement.**  This Agreement is a binding agreement and contains all material agreed-upon terms.

**2.2    State Law Settlement.**  For purposes of settlement only, the Parties stipulate to include all Class Members possessing New York State Law claims during the Relevant Period into this Agreement.

**2.3    Retention of the Administrator.**  To the extent necessary, the Parties shall engage an Administrator who is mutually agreeable to the Parties.

**2.4    Responsibilities of the Administrator**.  The Administrator shall be responsible for:

   A.    preparing, printing and disseminating the Notice and Claim Forms to the Class;

   B.    copying counsel for all Parties on material correspondence and promptly notifying all counsel for the Parties of any material requests or communications made by any Party;

   C.    promptly furnishing to counsel for the Parties copies of any Opt-out Statements, objections or other written or electronic communications from the Class which the Administrator receives;

   D.    receiving and reviewing the Claim Forms submitted by the Class;

   E.    keeping track of Opt-out Statements including maintaining the original mailing envelope in which the request was mailed;

   F.    mailing all required tax forms to Class Members and to Class Counsel as provided herein;

   G.    setting up a Settlement Account to be used for the distribution of all Settlement Checks to Claimants, Plaintiffs' Counsel, the Claims Administrator and to Named Plaintiffs;

   H.    calculating the amount of each Claimant's Settlement Check;

   I.    calculating the employer-side payroll taxes required pursuant to the settlement;

   J.    calculating and paying each Claimant's taxes and preparing appropriate tax forms for Defendants and for each Claimant;

   K.    mailing the Settlement Checks to Claimants;

   L.    ascertaining current address and addressee information for each Notice and Claim Form returned as undeliverable and the mailing of Notice and Claim Form;

M. responding to inquiries of the Class regarding procedures for filing objections, Opt-out Statements, and Claim Forms;

N. referring to Plaintiffs' Counsel all inquiries by the Class regarding matters not within the Administrator's duties specified herein;

O. responding to inquiries from Class Counsel and Defense Counsel consistent with the Administrator's duties specified herein;

P. promptly apprising Class Counsel and Defense Counsel of the activities of the Administrator;

Q. maintaining adequate records of its activities, including the dates of the mailing of Notice(s) and mailing and receipt of Claim Forms(s), returned mail and other communications and attempted written or electronic communications with the Class;

R. confirming in writing to Plaintiffs' Counsel and Defense Counsel its completion of the administration of the settlement;

S. timely responding to communications from the Parties or their counsel;

T. preparing and mailing all notices required pursuant to the Class Action Fairness Act; and,

U. such other tasks the Parties mutually agree.

In addition, no later than fifteen (15) days prior to the Fairness Hearing, the Administrator shall certify jointly to Plaintiffs' Counsel and to Defense Counsel (a) a list of all Class Members who timely filed their Claim Forms; (b) a list of all Class Members who filed timely objections; (c) a list of all Class Members who did not file a Claim Form; and, (d) a list of all Class Members who requested to opt-out of the settlement at any time during the opt-out period.  The Administrator shall also provide Defendants with an updated address list for the Class.  Throughout the period of claims administration, the Administrator will provide reports to the Parties upon request by either Party, regarding the status of the mailing of the Notices and Claims Forms to the Class, the claims administration process, and distribution of the Settlement Checks or any other aspect of the claims administration process.

2.5 **Notice.**  The Notice will inform Class Members about this Settlement and will also advise them of the opportunity to object to, opt-out of, or to file a Claim Form to obtain a Settlement Check pursuant to this Agreement, and/or to appear at the Fairness Hearing. Within thirty (30) days of the entry of the Implementing Order by the court, the Administrator will mail to all Class Members, via First Class United States Mail, the Court–approved Notices of Proposed Settlement and Fairness Hearing, with Claims Form. The mailing will include English and Spanish versions of the Notice and Claims Form.  The Administrator will take all *reasonable steps* to obtain the correct address of any Class Member for whom a Notice and Claims Form is returned by the post office as

undeliverable, including one skip trace, and shall attempt a re-mailing to any Class Member for whom it obtains a more recent address. The Administrator will notify Plaintiffs' Counsel and Defense Counsel of any Notice and Claim Form sent to a Class Member that is returned as undeliverable after the first mailing, as well as any such Notice and Claim Form returned as undeliverable after any subsequent mailing(s) as set forth in this Agreement.

**2.6** **Access to the Administrator**.  The Parties will have equal access to the Administrator throughout the claims administration period.  Plaintiffs' Counsel and Defense Counsel agree to provide the Administrator with all accurate information necessary to reasonably assist the Administrator in locating the Class.

**2.7** **Approval of the Implementing Order.**

(A) Plaintiffs' Counsel shall apply to the Court to publish the proposed Notice and Claim Form. The proposed Notice, Claim Form and Implementing Order approved by the Parties is annexed hereto and made a part of this agreement as Exhibits "1", "2" and "3" respectively.

(B) The proposed Implementing Order will seek the setting of a deadline of forty-five (45) days from the initial mailing of Notice and Claim Forms to the Class: (a) for Class Members to submit Claim Forms, (b) to file Opt-out Statements, and/or (c) to become Objectors. The Proposed Implementing Order shall also seek to set a date for the Fairness Hearing, for Final Approval of the Settlement which shall be no earlier than ninety (90) days following the date that the Court enters the proposed Implementing Order.

(C) Plaintiffs' Counsel will inform the Court of the intended process to obtain a "Final Order" and a "Judgment of Dismissal" that will, among other things: (1) approve the settlement as fair, adequate and reasonable; (2) approve the proposed notice to the Class; incorporate the terms of the Release, as described herein; (3) dismiss the Litigation; and (4) award Plaintiffs' Counsel fees, expenses and costs.

(D) The Parties will work together, diligently and in good faith, to expeditiously obtain an Implementing Order, Final Order, and Final Judgment and Dismissal with prejudice.  Any disputes which arise between the Parties related to the Parties' efforts to obtain a Final Order, Final Judgment and Dismissal with prejudice shall be submitted to this Court.

**2.8** **Notice and Claims Forms to Class**

(A) Within five (5) days of the Court's entry of the Implementing Order, Defense Counsel will provide Plaintiffs' Counsel and the Administrator, in electronic form and for all Class Members, the Class Member List.  All information provided regarding the Class will be treated as confidential information by Plaintiffs' Counsel and the Administrator.  Said information will not be used by Plaintiffs' Counsel and the Administrator for any purpose other than to effectuate the terms of settlement.

    (B)    Class Members will have forty-five (45) days from the date of initial mailing to return the Claim Form and become a Claimant. To be effective, a Claim Form must be post-marked by the Court-authorized Bar Date or must be received by the Administrator on or by the court-authorized Bar Date. To the extent that the envelope does not contain a post-mark, the date that the Administrator stamps the envelope or claim form 'received,' shall apply.

**2.9**    **Opt-outs.**

    (A)    Class Members who choose to opt-out of the settlement as set forth in this Agreement must mail via First Class United States Mail, postage prepaid, a written, signed statement to the Administrator that states he or she is opting out of the settlement, and include his or her name, address, and telephone numbers and statement indicating his or her intention to opt-out such as: "I opt out of the Eatery and Whym wage and hour settlement." ("Opt-out Statement"). To be effective, an Opt-out Statement must be post-marked or received by the Administrator by the Bar Date.

    (B)    The end of the time period to opt-out of the settlement ("Opt-out Period") shall be on or before the Bar Date.

    (C)    The Administrator will send a final list of all Opt-out Statements to Plaintiffs' Counsel and Defense Counsel before the Fairness Hearing. The Administrator will retain the stamped originals of all Opt-out Statements and originals of all envelopes accompanying Opt-out Statements in its files until such time as the Administrator is relieved of its duties and responsibilities under this Agreement.

    (D)    Any Class Member who does not submit an Opt-out Statement pursuant to this Agreement, will be deemed to have accepted the settlement and the terms of this Agreement, will be bound by the Judgment in this case, and have any State Law Claims released and dismissed. Only those Class Members who timely complete and return a Claim Form post-marked by the Bar Date will be deemed authorized to participate in this settlement as a "Claimant". Defendants will fund the Settlement Account with the aggregate amount allocated to each Claimant as set forth in this Agreement. **<u>Defendants shall have no obligation to pay any Class Member who does not submit a timely Claim Form as set forth in this Agreement</u>**.

    (E)    For purposes of this agreement, the Named Plaintiffs and FLSA Claimants are deemed to be Claimants, and are not required to file a Claim Form to participate in the settlement, unless they opt-out in accordance with the terms of this agreement.

**2.10**    **Objections to Settlement.**

    (A)    Objectors who wish to present objections to the proposed settlement at the Fairness Hearing must first do so in writing. To be considered, such statement must be mailed to the Administrator via First-Class United States Mail post-

marked by the Bar Date. The statement must include all reasons for the objection, and any supporting documentation. The statement must also include the name, address, and telephone numbers for the Class Member making the objection. The Administrator will stamp the date received on the original and send copies of each objection, supporting documents, to Plaintiffs' Counsel and Defendants' Counsel by email delivery no later than three (3) days after receipt of the objection.

(B) An Objector also has the right to appear at the Fairness Hearing either in person or through counsel hired by the Objector. An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing on his or her written objections at the time he or she submits his or her written objections. An Objector may withdraw his or her objections at any time. An Objector is a Class Member and an objection does not constitute the filing of an Opt-out Statement.

**2.11**        **Fairness Hearing and Motion for Final Approval and Dismissal.**

At the Fairness Hearing, the Parties will request that the Court, among other things: (1) approve the settlement and Agreement as fair, reasonable, adequate, and binding on all Class Members who have not timely opted out of the settlement; (2) order the Administrator to distribute the Settlement Checks to the Class Members who filed valid, timely Claim Forms; (3) order the attorneys' fees, expenses and costs to be paid to Plaintiffs' Counsel out of the Settlement Account; (4) (a) order the dismissal with prejudice of all State Law Claims by all Class Members who did not opt-out; (b) order the dismissal with prejudice of FLSA Claims and State Law Claims by all Claimants; (5) order entry of Final Judgment in accordance with this Agreement; and (6) retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

**2.12 Mailing of Settlement Checks. Defendants shall fund the Settlement Account five (5) days after the Final Effective Date. The Claims Administrator shall mail the Settlement Checks and Plaintiffs' Counsels' check to pay for all approved professional fees and expenses and any enhancement awards to the Named Plaintiffs to the Claimants, to Plaintiffs' Counsel and to the Named Plaintiffs ten (10) days after the Final Effective Date.**

**2.14 Effect of Failure to Grant Final Approval.** In the event the Court fails to enter Judgment in accordance with this Agreement, or such Judgment does not become Final as defined herein, the Litigation will proceed as if no settlement had been attempted.

**3.        SETTLEMENT TERMS**

**3.1 Settlement Fund Computation and Allocations.**

Individual Claimants share of the Settlement Fund shall be computed as follows:

(A) <u>Eatery Servers and Bartenders</u>: Claimants employed as servers and bartenders at Defendant 953 Associates LLC d/b/a Eatery shall be paid $11.62 for every week they worked at Eatery during the Relevant Time Period. This figure represents 2.5 hours per week of unpaid wages at a rate of $4.65 per hour. Claimant servers and bartenders who were employed at Eatery between December 14, 2007 and the April 20, 2012 shall be entitled to FLSA liquidated damages at a rate of two times (2x) the allocated share for FLSA period. Claimant servers and bartenders who were employed at Eatery between July 20, 2004 and December 13, 2007 shall be entitled to liquidated damages at 1.25 times the allocated share for New York Labor Law ("NYLL") period.

(B) <u>Eatery bussers, runners, and barbacks</u>: Claimants employed as bussers, runners, and barbacks at Defendant 953 Associates LLC d/b/a Eatery shall be paid $15.00 for every week they worked at Eatery during the Relevant Time Period. This figure represents 2.5 hours per week of unpaid wages at a rate of $6.00 per hour. Claimant bussers, runners, and barbacks who were employed between December 14, 2007 and April 20, 2012 shall be entitled to FLSA liquidated damages at a rate of two times (2x) the allocated share for FLSA period. Claimant bussers, runners, and barbacks who were employed between July 20, 2004 and December 13, 2007 shall be entitled to liquidated damages at 1.25 times the allocated share for theNYLL period.

(C) <u>Eatery "back of the house," hosts, and flyer workers</u>: Claimants employed as food preparers, cooks, dishwashers, porters, other "back of the house" employees, hosts and flyer workers at Defendant 953 Associates LLC d/b/a Eatery shall be paid $33.75 for every week worked at Eatery during the Relevant Time Period. This figure represents 2.5 hours per week of unpaid wages at a rate of $13.50 per hour. Claimant food preparers, cooks, dishwashers, porters, other "back of the house" employees, hosts and flyer workers who were employed between December 14, 2007 and April 20, 2012 shall be entitled to FLSA liquidated damages at a rate of two times (2x) the allocated share for FLSA period. Class members employed as food preparers, cooks, dishwashers, porters, and other 'back of the house' employees who were employed between July 20, 2004 and December 13, 2007 shall be entitled to liquidated damages at 1.25 times the allocated share for the NYLL period.

(D) <u>Whym servers and bartenders</u>: Claimants employed as servers and bartenders at Defendant Grace Under Fire LLC d/b/a Whym shall be paid $11.62 for every week they worked for Whym during the Relevant Time Period. This figure represents 2.5 hours per week of unpaid wages at a rate of $4.65 per hour. Claimant servers and bartenders who were employed at Whym during the Relevant Time Period (between November 16, 2005 and April 20, 2012) shall be entitled to liquidated damages at 1.25 times the allocated share for the NYLL period.

(E) <u>Whym bussers, runners, and barbacks</u>: Claimants employed as bussers, runners, and barbacks at Defendant Grace Under Fire LLC d/b/a Whym shall be paid

$15.00 for every week they worked at Whym during the Relevant Time Period. This figure represents 2.5 hours per week of unpaid wages at a rate of $6.00 per hour. Claimant bussers, runners, and barbacks who were employed during the Whym Relevant Time Period (between November 16, 2005 and April 20, 2012) shall be entitled to liquidated damages at 1.25 times the allocated share for the NYLL period.

(F) <u>Whym "back of the house," hosts, and flyer workers</u>: Claimants employed as food preparers, cooks, dishwashers, porters, other "back of the house" employees, hosts and flyer workers at Defendant Grace Under Fire LLC d/b/a Whym shall be paid $33.75 for every week worked at Whym during the Relevant Time Period. This figure represents 2.5 hours per week of unpaid wages at a rate of $13.50 per hour. Claimant food preparers, cooks, dishwashers, porters, other "back of the house" employees, hosts and flyer workers who were employed during the Whym Relevant Time Period (between November 16, 2005 and April 20, 2012) shall be entitled to liquidated damages at 1.25 times the allocated share for the NYLL period.

(G) **Enhancement Award for Named Plaintiffs**. Class Counsel shall seek Court Approval of the payment of an Enhancement Award of $2,500.00 to each Named Plaintiff in consideration for work performed on behalf of the Class. Defendants shall not comment on this application. The substance of Plaintiff's application for an Enhancement Award is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy and good faith of the settlement of the Litigation. The outcome of the Court's ruling on the application for an Enhancement Award shall not terminate this Agreement or otherwise affect the Court's Final Approval.

**(H)** **Maximum Payment**. The Parties expressly acknowledge that Defendants shall not be required to pay more than the Settlement Fund of Nine Hundred Thousand Dollars ($900,000.00), to the Claimants, Plaintiffs' Counsel, to the Named Plaintiffs or to anyone else (but excluding employer's share of payroll taxes due under this Agreement), regardless of the amount of Class Members that file Claim Forms.

**3.2    Professional Fees and Cost.**  At the Fairness Hearing, Class Counsel will petition the Court for an award of attorneys' fees and costs not to exceed three hundred thousand dollars ($300,000.00), which includes reimbursement of their actual litigation expenses and costs, and the Class Administrator's Fees.  These fees shall come out of the Settlement Fund. Defendants will not oppose this application, including any appeal or request for reconsideration if the application is denied or modified by the Court.  The substance of Class Counsel's application for attorneys' fees and costs is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation.  The outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's Final Approval.

**3.3** **Claim Administrator's Fees.** Within five days before the Fairness Hearing, the Claim Administrator will provide Class Counsel and Defense Counsel with a listing of their fees incurred to date, and their anticipated fees for the remainder ("Claims Administrator Fees"). The Claims Administrator Fees shall be deducted from the Settlement Fund prior to distribution of any monies to the Claimants, Plaintiffs' Counsel and/or the Named Plaintiffs. The Class Administrator's Fees shall be deducted from the three hundred thousand dollars ($300,000.00) allotted for attorneys' fees and costs.

### 3.4 Tax Characterization.

(A) Except as set forth below, settlement payments to the Class will be allocated as follows: (i) all payments calculated in consideration for time worked will be deemed back-wage payments and/or wage income, and (ii) all payments made in consideration for liquidated damages are non wage payments and are subject to 1099 reporting.

(B) All Wage Payments shall be subject to all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") on an IRS Form W-2. All Non-Wage Payments shall be made without any tax withholdings and shall be reflected on a Form 1099 issued to each Claimant and FLSA Claimant. Payments of attorneys' fees and costs pursuant to Section 3.2 shall be made without any withholdings. Class Counsel will receive a Form 1099 for this payment. Any Enhancement Award Payment shall be made without any withholdings and reported to the IRS via a Form 1099. Defendants and the Claims Administrator shall exchange such information as is necessary for the Claims Administrator to make proper tax withholdings and comply with tax reporting obligations as described in this Section 3.4.

(C) Defendants shall pay the employer's share of the FICA tax and any federal and state unemployment tax due that are traditionally borne by employers, with respect to the Wage Payments. The Claims Administrator shall be responsible for making all withholdings from employees' settlement payments required pursuant to any federal, state, or local tax law or regulation, with respect to the Wage Payments.

**3.5 Hold Harmless.**

With respect to payments received pursuant to this Agreement that are not characterized as W-2 wage income, the Named Plaintiffs, FLSA Claimants and the Class assume fully responsibility of any and all federal, state and local taxes or contributions which may hereafter be imposed or required to be paid under any federal, state, or local law of any kind. As such, although Parties believe, in good faith, that the tax treatment of all payments set forth in this Agreement are proper and in compliance with applicable IRS regulations, if, notwithstanding such belief, the Internal Revenue Service or any other federal, state or local government, administrative agency or court determines that any individual or entity and/or Defendants are liable for any failure by any Named Plaintiff,

FLSA Claimant, Class Member and/or Defendant to pay federal, state or local income or employment or payroll taxes with respect to any payment received pursuant to this settlement that is not characterized as W-2 wage income, Named Plaintiffs, FLSA Claimants, and the Class agree to hold Defendants harmless, and indemnify Defendants from any payments the Defendants may be required to make (including any payments for interest and penalties) to any taxing authority resulting from the issuance of an IRS tax form 1099 and any Named Plaintiff's, FLSA Claimant's and/or Class Member's failure to pay any taxes that any such individual or entity owes related to said income.

With respect to payments received pursuant to this Agreement that are characterized as Attorneys' Fees, Class Counsel assume responsibility of any and all federal, state and local taxes or contributions which may hereafter be imposed or required to be paid under any federal, state, or local law of any kind.  As such, although Parties believe, in good faith, that the tax treatment of all payments set forth in this Agreement are proper and in compliance with applicable IRS regulations, if, notwithstanding such belief, the Internal Revenue Service or any other federal, state or local government, administrative agency or court determines that Class Counsel is liable for any federal, state or local taxes or contributions with respect to any payment received pursuant to this settlement that is characterized as Attorneys' Fees, Class Counsel shall be responsible for said payments and shall hold Defendants harmless for said payments..

## 4. RELEASE

### 4.1 Release of Claims.

(A)   Upon the Order Granting Final Approval, and except as to such rights or claims as may be specifically created by this Agreement, each Class Member who does not opt-out of this Agreement, on his or her behalf, and on behalf of his or her respective current, former and future heirs, spouses, executors, administrators, agents, and attorneys, fully releases and discharges Defendants, Defendants' present and former parent companies, subsidiaries, related or affiliated companies, and their respective shareholders, officers, directors, employees, members, managers, fiduciaries, trustees, employee benefit plan administrators, agents, attorneys, insurers, successors and assigns, and all persons or entities acting by, through, under or in concert with any of them, and any individual or entity which could be jointly liable with any of them (collectively, the "Releasees"), from any and all claims for any wage and hour violations under federal, state, and/or local law, including but not limited to, any and all claims for unpaid wages, tips, gratuities, service charges, administrative or other mandatory charges, overtime pay, failure to maintain and furnish employees with proper wage records, claims to recover the tip credit, spread-of-hours, claims, meal break claims, uniform maintenance claims, uniform reimbursement claims, and all other claims that were or could have been asserted in the Litigation, whether known or unknown, under federal, state, and/or local wage and hour laws (including but not limited to the New York Labor Law and New York Code of Rules and Regulations), through the Effective Date of this Agreement.  This release includes all claims for all damages arising from any such released claims, including claims for liquidated

damages, interest, and attorneys' fees' and costs. In addition, each Claimant specifically and affirmatively releases Releasees from any claims for unpaid minimum wages, overtime wages, tips, tip credits, gratuities, liquidated damages, and attorneys' fees and costs related to such FLSA Claims, that were or could have been asserted in the Litigation, whether known or unknown, through the date of preliminary approval of this Agreement.

(B) Each Claimant or FLSA Claimant forever and fully releases Defendants from all New York State Law Claims and FLSA claims.

(C) By operation of the entry of the Judgment and Final Order, and except as to such rights or claims as may be created by this Agreement each Claimant forever and fully releases Defendants from all released claims as detailed in paragraph 4.1(A) above.

(D) **No Assignment.** Class Counsel and Named Plaintiffs, on behalf of the Class and each individual Class Member, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

(E) **Non-Admission of Liability.** By entering into this Agreement, Defendants in no way admit any violation of law or any liability whatsoever to Named Plaintiffs and/or the Class Members, individually or collectively, all such liability being expressly denied. Likewise, by entering into this Agreement, Defendants in no way admit to the suitability of this case for class or collective action litigation other than for purposes of settlement. Rather, Defendants enter into this Agreement to avoid further protracted litigation and to resolve and settle all disputes with Plaintiffs and the Class. Settlement of the Litigation, negotiation and execution of this Agreement, and all acts performed or documents executed pursuant to or in furtherance of this Agreement or the settlement: (a) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on the part of Defendants or of the truth of any of the factual allegations in any and all Complaints filed in the Lawsuit; and (b) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendants in any civil, criminal, administrative or arbitral proceeding. The Parties understand and agree that this Agreement is a settlement document and shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of the Agreement.

(F) Except as provided in this Agreement, upon payment of the attorneys' fees, expenses, and costs approved by the Court, Plaintiffs' Counsel, the Named Plaintiffs, FLSA Claimants, and the Class, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that he, she or they may have against Defendants for attorneys' fees or costs associated with Plaintiffs' Counsel's representation of the Class. Plaintiffs' Counsel further understands and

agrees that any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees, expenses and costs associated with Plaintiffs' Counsel's representation in the Litigation.

(G) Notwithstanding any provision to the contrary, any Class Member who does not become a Claimant as defined in paragraph 1.6 or opt-outs of this Action shall not be deemed to have relinquished any rights her or she may possess under the Fair Labor Standards Act.

## 5. INTERPRETATION AND ENFORCEMENT

**5.1** **Cooperation Between the Parties; Further Acts.** The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms. Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

**5.2** **Entire Agreement.** This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

**5.3** **No Publicity.** Named Plaintiffs and Class Counsel agree that they will not issue, send or post, or cause to be issued, sent or posted, any press release, posting, e-mail, or other verbal or written communication to any electronic, print, or digital media, blogs, or social networking sites, including but not limited to Facebook, LinkedIn and Twitter, (collectively, the "Media") regarding the Litigation, the Parties' settlement discussions, the existence and/or terms of this Agreement, and/or the facts and events leading up to same. If contacted by any member of the Media or any other individuals through any of the Media, Named Plaintiffs and/or Class Counsel will simply state that the Litigation has been resolved and will provide no other comment whatsoever. In the event any Named Plaintiff violates this Section 5.3, and Defendants prove such violation at trial, Defendants shall be entitled to: (1) injunctive relief enforcing this Agreement notwithstanding the foregoing; (2) the return of the Named Plaintiff's individual Settlement Amount and Defendants' attorneys' fees and costs incurred in prosecuting any action as a result of the breach of this Section; and (3) any other remedies provided by law or equity. Notwithstanding the terms of this paragraph, Defendants shall be free to make whatever disclosures it deems appropriate with respect to this litigation provided those disclosures are truthful, and no derogatory statements are made about Class Counsel and/or the Named Plaintiffs.

**5.4** **Binding Effect.** This Agreement shall be binding upon the Parties and, with respect to Named Plaintiffs and Class, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

**5.5** **Arms' Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

**5.6** **Captions.** The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**5.7** **Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

**5.8** **Blue Penciling.** If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect.

**5.9** **Governing Law.** This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

**5.10** **Continuing Jurisdiction.** The Parties shall request the Court to retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

**5.11** **Waivers, etc. to Be in Writing**. No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**5.12** **When Agreement Becomes Effective; Counterparts**. This Agreement shall become effective upon its full execution and final approval by the Court. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

**5.13** **Binding Authority of Plaintiffs' Counsel**. Plaintiffs' Counsel hereby represents that they are fully authorized to bind the Named Plaintiffs to the terms and conditions hereof

and that they have retainer agreements and/or authorizations to execute this Agreement on their behalf.

**5.14** **Signatures.**  This Agreement is valid and binding if signed by the Parties' authorized representatives.

**5.15** **Facsimile and Email Signatures.**  Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party.  Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.